No. 12,907.

MacMarr Food Corporation, Inc. *v.* Jagger Produce Company.
(20 P. [2d] 550)

Decided March 20, 1933.

Mr. W. D. Wright, Jr., Mr. Edward F. Chambers (deceased), for plaintiff in error.

Mr. R. R. Cloud, for defendant in error.

*In Department.*

Mr. Justice Moore delivered the opinion of the court.

The Sherman Mercantile Company sued the Jagger Produce Company in the district court of Pueblo county to recover possession of certain cases of eggs. A judgment entered for the defendant upon a directed verdict was reversed by this court and a new trial ordered because "There was ample evidence to carry the case to the jury." *Sherman Co. v. Mountain Co.,* 87 Colo. 552, 290 Pac. 276. Thereafter, the MacMarr Food Corporation, Inc., the successor of the Sherman Mercantile Com-

pany, was substituted as plaintiff. A second trial resulted in a verdict for the defendant and judgment for $1,850, the agreed value of the eggs in question. A reversal of this judgment is sought upon the ground, among others, that the verdict is contrary to, and not supported by, the evidence.

A full recital of the pleadings and facts is set forth in the case of *Sherman Co. v. Mountain Co., supra,* which should be read in connection herewith.

On September 1, 1927, the Sherman Mercantile Company owned 327 cases of eggs designated as lot No. 0282 which were then in cold storage in the warehouse of the Mountain Ice and Coal Company at Pueblo. On this day, one Jim Davidson, an employee of the Sherman Mercantile Company, and assigned to duty at the Mountain Ice and Coal Company's plant as an egg candler and chicken picker, was tendered by J. J. Jagger, the manager of defendant company, an order upon the Sherman Mercantile Company for delivery of 327 cases of eggs by the Sherman Mercantile Company to Richards. This order was signed "C. R. Richards by J. J. Jagger." Pursuant thereto Davidson issued an order directing the Mountain Ice and Coal Company to deliver these eggs to C. R. Richards. At the same time Jagger presented to the Mountain Ice and Coal Company an order, dated July 31, 1927, and signed by Richards, to deliver the eggs to the Jagger Produce Company. Richards was engaged in buying, selling and transporting by truck, produce in the Arkansas valley. At this time he was indebted to both plaintiff and defendant and otherwise in straitened circumstances. The Jagger Produce Company, claiming a sale from Richards to it, credited Richards' account at the rate of $7.50 per case, leaving a balance of $61.60 due from Richards. The Sherman Mercantile Company whose main office was at Lamar, Colorado, believing that a sale of the eggs had been legally consummated by its duly authorized agent at Pueblo, one Sam Martin, charged Richards' account $2,452.50.

Upon being advised of this charge, Richards repudiated it and informed the Sherman Mercantile Company that he knew nothing whatever concerning the purported sale of the eggs by the Sherman Mercantile Company to him; that he had neither authorized Jagger to sign his name nor to present the delivery order; that the order of July 31, 1927, was one of two blank orders issued by Richards to Jagger at a time when Richards owned 51 cases of eggs in the Mountain Ice and Coal Company's plant and that Richards had not authorized Jagger to present this order requesting the delivery of the eggs in question. Upon being so advised, the Sherman Mercantile Company immediately cancelled its charge for the eggs and instituted this replevin action. These facts appear in evidence. Both the Sherman Mercantile Company and Richards testified that there had been no sale of the eggs to Richards.

Defendant asserts title to the eggs by virtue of the alleged sale from the Sherman Mercantile Company through its agent Davidson to Richards and the claimed sale by Richards to it. It further urges that if Davidson's acts were unauthorized, they were ratified by the subsequent conduct of the Sherman Mercantile Company. We are unable to agree with either contention.

▪ To constitute a sale, there must be mutual consent of the parties thereto. Here there was none. If we assume that Davidson had authority to issue the order directing the storage company to deliver the eggs to Richards, the order is wholly insufficient to prove a sale of the eggs by the Sherman Mercantile Company to Richards. There being no sale by the Sherman Mercantile Company to Richards, it becomes immaterial whether there was a valid sale by Richards to the Jagger Produce Company.

▪ Acts performed in ignorance of the true facts do not constitute ratification. It is true that the Sherman Mercantile Company made a charge against Richards for the eggs in question, but it did so only upon the erroneous assumption that Martin, who was its only duly con-

stituted agent at Pueblo, had authorized the sale. When it was advised of the facts in connection with the alleged sale, it immediately cancelled its charge against Richards and instituted this suit.

To permit this judgment to stand would result in a reduction of Richards' indebtedness to the Jagger Produce Company in the sum of $1,850, the stipulated value of the eggs, at the expense of the Sherman Mercantile Company in a like amount or in the words of the witness Martin in a conversation between him and Jagger, "Oh, you expect to take our eggs and pay Richards' account."

The judgment is reversed and the cause remanded with directions to enter judgment for MacMarr Food Corporation, Inc., in the sum of $1,850.

Mr. Chief Justice Adams and Mr. Justice Butler concur.